**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| CHRISTOPHER KOETTER,<br><br>      Plaintiff,<br><br>  v.<br><br>KIP DAVIES,<br><br>      Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:07-CV-724 TS<br><br>District Judge Ted Stewart |

Plaintiff, Christopher Koetter, an inmate at the Federal Correctional Institution in Duluth, Minnesota, filed this pro se civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2010). Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915(b). The United States Marshals served process upon Defendant, who filed an Answer and *Martinez* Report addressing Plaintiff's allegations.[1] No additional discovery was conducted. Before the Court is Defendant's Motter for Summary Judgment based on the evidence presented in the *Martinez* Report.

---

[1] In *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), the Tenth Circuit approved the practice of district courts ordering government officials to prepare a report to be included with the pleadings in cases where a prisoner alleges a constitutional violation by such officials.

## I. Background

Plaintiff's Complaint asserts a single claim of unreasonable search and seizure under the Fourth Amendment based on Defendant's alleged use of excessive force during a search of Plaintiff's residence and a stand-alone shed on the property. The search was conducted pursuant to a warrant obtained by the United States Drug Enforcement Agency (DEA) to search for illegal drugs. Defendant Davies was a member of the Murray City SWAT team who helped execute the search warrant. Plaintiff was injured during the search when Defendant discharged a "shock-lock" round from his shotgun in order to gain entry into the shed where Plaintiff was located. Plaintiff's Complaint seeks compensatory damages, costs, and "such other and further relief as is just and equitable."

Defendant's motion for summary judgment asserts that Plaintiff cannot show a constitutional violation because the force used was reasonable and was not directed at Plaintiff but was only intended to gain entry into the shed. Defendant argues that the Fourth Amendment does not protect against such accidental or unintentional uses of force. Defendant also asserts that he is entitled to qualified immunity because it would not have been clear to a reasonable officer at the time of the incident that his actions were unlawful.

## II. Facts[2]

1. In December 2005, Douglas Roberts was a police sergeant employed by the Murray City Police Department; he was contacted by DEA agents for assistance in execution of a narcotics search warrant. (Affidavit of Douglas Roberts, ¶ 2.)

2. Because the warrant did not have an express knock and announce requirement for entry into a shed on the premises, which was intended to be part of the search, Sergeant Roberts contacted a Murray City Assistant Attorney to determine whether a knock and announce would be required for the shed. (Roberts Aff. ¶¶ 3-4.)

3. The Assistant City Attorney advised Sergeant Roberts that no knock and announce was required before officers entered the shed to conduct their search. (*Id*. ¶ 4.)

4. At an operational briefing this advice was conveyed to officers involved in execution of the warrant. (*Id*.)

5. With assistance from Midvale City's SWAT team, the search warrant was served by two separate teams or "sticks." (Roberts Aff. ¶ 6; Affidavit of Brian Wiseman, ¶¶ 3-4.)

6. Officer Brian Wiseman led the "stick" assigned with

---

[2] The undisputed facts presented here are drawn directly from Defendant's Memorandum in Support of Motion for Summary Judgment (Dkt. no. 21). However, the court construes the facts in the light most favorable to Plaintiff, the non-moving party. *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

searching the shed. (Wiseman Aff. ¶ 5.)

7. As the team approached the shed, officers observed that it appeared to be locked with padlocks. (Wiseman Aff. ¶ 6; Affidavit of Kip Davies, ¶ 6.)

8. Because it appeared to be locked from the outside and the door opened out, it appeared that use of a pry bar, ram or other device would not permit entry. (Wiseman Aff. ¶ 6.)

9. Officer Wiseman instructed Officer Davies to see if he could open the door by hand. (Wiseman Aff. ¶ 8; Davies Aff. ¶ 7.)

10. Officer Davies attempted to open the door but could not. (Wiseman Aff. ¶ 8; Davies Aff. ¶ 8.)

11. Neither Officer Davies nor Officer Wiseman believed the shed to be occupied. (Wiseman Aff. ¶ 10; Davies Aff. ¶ 9.)

12. It was then determined that Officer Davies should fire a clay "shock-lock" round from his shotgun to attempt to defeat one of the locks. (Davies Aff. ¶ 10; Wiseman Aff. ¶ 9.)

13. Officer Davies fired one round into the lock. (Wiseman Aff. ¶ 11; Davies Aff. ¶ 12.)

14. After the round was fired, officers were able to open the shed door. (Wiseman Aff. ¶ 12; Davies Aff. ¶ 13.)

15. Officer Wiseman then entered the shed, finding Mr. Koetter inside and discovering that Koetter had been injured by the shotgun blast. (Wiseman Aff. ¶ 12; Davies Aff. ¶ 14.)

16. Various officers immediately sought medical attention for Mr. Koetter. (Roberts Aff. ¶ 11; Wiseman Aff. ¶13.)

### III. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Cellotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Thus, Rule 56(a) of the Federal Rules of Civil Procedure allows a party to move "with or without supporting affidavits for a summary judgment on all or part of the claim." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Cellotex*, 477 U.S. at 325. This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to

5

establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Federal Rule of Civil Procedure 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

### IV. Substantive Legal Standards

#### A. Excessive Force

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures. U.S. Const. Amend. IV. The Supreme Court has recognized that the reasonableness of a search or seizure depends not just on why or when it is made, but also on how it is accomplished. *Graham v.*

*Connor*, 490 U.S. 386, 395 (1989). Thus, "the general touchstone of reasonableness which governs Fourth Amendment analysis . . . [also] governs the method of execution of [a] warrant." *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (internal citations omitted). "[S]o long as the officer's conduct remains within the boundaries of reasonableness, an officer has discretion over the details of how best to proceed with a search warrant's execution." *Lawmaster v. Ward*, 124 F.3d 1341, 1349 (10th Cir. 1997). "Occasionally, such details include damaging property, detaining residents, or taking action necessary to protect the searching officers." *Id.* (citing *Dalia v. United States*, 441 U.S. 238, 257 (1979)). Nevertheless, when executing a search warrant an officer is always "limited to conduct that is reasonably necessary to effectuate the warrant's purpose." *Id*. When evaluating the reasonableness of an officer's actions courts consider the "totality of the circumstances." *Id*. Moreover, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989)

### B. Qualified Immunity

The doctrine of qualified immunity shields government officials from personal liability for civil damages "insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985*)*. Thus, the Supreme Court has held that immunity questions should be addressed at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227(1991).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court laid out a two-step process for making qualified immunity determinations. Under *Saucier*, courts were first required to answer the following threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the answer to that question was affirmative, courts next asked "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id*.

More recently, however, in *Pearson v. Callahan*, 555 U.S. —--, 129 S. Ct. 808 (2009), the Supreme Court ruled that the "inflexible" two-step inquiry mandated by *Saucier* is no longer

8

required.  Under *Pearson*, courts are now free to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 129 S. Ct. at 818.  Thus, where it is possible to "rather quickly and easily decide that there was no violation of a clearly established law" courts can conserve judicial resources by "avoid[ing] the more difficult question whether the relevant facts make out a constitutional question at all."  *Id*. at 820.  This approach is also intended to reduce the risk that "constitutional questions may be prematurely and incorrectly decided in cases where they are not well presented."  *Id*.

In Fourth Amendment search and seizure cases, qualified immunity provides officers an extra level of protection, "in addition to the deference officers receive on the underlying constitutional claim," by allowing immunity from suit if the relevant legal boundaries were not clearly established at the time of the alleged violation.  *Saucier*, 533 U.S. 206.  In such cases, to overcome qualified immunity a plaintiff must not only show that the officer's actions were "objectively unreasonable," but also that the officer's mistaken belief as to the legality of his actions was itself unreasonable.  *Id*.  "If the law did not put the officer on notice that his conduct would be clearly unlawful,

summary judgment based on qualified immunity is appropriate." *Id.* at 202. Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986).

## V. Fourth Amendment Analysis

The evidence here does not support the conclusion that Defendant acted unreasonably by discharging a shock-lock round to gain access to the shed. First, Defendant clearly was not required to follow the knock-and-announce procedure before forcibly entering the shed, as Plaintiff contends. Although the Supreme Court has held that announcement is an element of the Fourth Amendment reasonableness inquiry with regard to searches of dwellings, *see Wilson v. Arkansas*, 514 U.S. 927, 934, 115 S. Ct. 1914, 1918 (1995), that requirement clearly does not apply here. Plaintiff does not contend that the shed here was used as a dwelling, much less that it bore any of the hallmarks of a dwelling. Thus, Defendant was not required to follow the knock-and-announce procedure.

Second, as noted above, it is well established that officers may intentionally cause property damage where reasonably necessary to safely and effectively execute a search warrant. *See Dalia,* 441 U.S. at 257. Given the multiple locks on the shed doors, the

10

unsuccessful attempt to open the doors without force, and the fact that the shed doors opened outward making it very difficult to force them in, Defendant had ample reason to believe that use of the shock-lock round was reasonably necessary. Although Plaintiff contends that closer examination of the locks would have revealed that they were unsecured and that force was unnecessary, such detailed examination would have undoubtedly caused delay and may have jeopardized the officers' safety.[3]

Third, there is no evidence that Defendant had reason to believe anyone was inside the shed. Not only did the shed appear to be locked from the outside, there was nothing to indicate that the shed was occupied. Plaintiff admits that he was completely unaware of the officers' presence and made no attempt to call out or otherwise warn them of his presence inside. Although Plaintiff asserts that the officers should have assumed he was in the shed based on the fact that he was not found in the house, the evidence shows that the house and shed were searched simultaneously by two separate teams, making Defendant unaware at the time of the shooting that Plaintiff was not inside the house.

---

[3] Plaintiff's only support for his contention that the doors were unlocked is a photograph taken following the search, after the scene had been secured by police. This photograph is not reliable evidence of the condition of the doors at the time of the search.

Finally, because Defendant had no reason to believe Plaintiff was in the shed, the force used to disable the lock cannot possibly be construed as being directed toward Plaintiff. As other courts have recognized, the Fourth Amendment prohibition on excessive force during arrest does not apply to unintentional or incidental applications of force. *See Owl v. Robertson*, 79 F. Supp 2d 1104, 1114 (D. Neb. 2000); *Dodd v. City of Norwich*, 827 F.2d 1, 7-8 (2nd Cir. 1987).

Based on these factors the court concludes that use of the "shock-lock" round to gain entry into the shed was reasonable based on the totality of the circumstances presented here. Thus, the evidence here does not support a claim of unreasonable search and seizure under the Fourth Amendment.

### VI. Qualified Immunity

Because Plaintiff has not shown that Defendant's actions violated any constitutional right, the court need not decide whether Defendant is entitled to qualified immunity.

### ORDER

Based on the foregoing analysis, IT IS HEREBY

ORDERED Defendant's Motion for Summary Judgment (Docket NO.

20) is GRANTED and judgment shall enter in favor of Defendants and against Plaintiff on all claims. It is further

ORDERED that this case shall be closed forthwith.

Dated this 22nd day of September, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge